[Crim. No. 10352.   Second Dist., Div. Four.   July 20, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. DONALD KENT SHAWVER, Defendant and Appellant.

Simi Dabah and Burton Marks, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and S. Clark Moore, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendant was charged with a violation of section 211 of the Penal Code (robbery from the person), with three priors. He admitted the priors and, after a trial to the court, was found guilty, it being stipulated that the robbery was in the second degree. A motion for new trial was denied, probation was denied and he was sentenced to state prison.

The prosecuting witness (Alessandro) testified that, between 1 and 2 a.m., while he was walking westerly toward Main Street on Fifth Street, in the City of Los Angeles, he was hit from behind, causing him to fall forward onto his knees and into a doorway. His assailant then jumped on him and attempted to take money from his pocket. The victim seized his assailant's wrist, wrestled with him and yelled for help. A nearby police officer arrived and found defendant struggling with the victim. The officer described defendant's conduct as follows: ''With one hand he was holding the victim's hand up and the other hand he was striking behind the head and also groping through the victim's pockets.'' As the officer disengaged defendant from the victim, he heard ''what sounded like change or some metal objects dropping on the ground.'' Search of the area disclosed $3.00 in currency and 81 cents in change — the amount which defendant was charged with taking.

After defendant's arrest, and after he had been taken to the police station, the arresting officer and his partner inter-

rogated the defendant. The officer's testimony as to the conversation was as follows:

"Q. Can you tell us what he said and what you said? A. I asked the defendant about it and he stated to me that he knew the victim had approximately $243 on him and that he knew he couldn't let a chance like this slide by and he was willing to take the chance and the risk that was prevailed upon him at this time, but he wouldn't let it pass.

"Q. Say anything about police at that time? A. He stated he didn't care whether the cops came around or not. He just couldn't let that chance slide by.

"Q. Is that the sum and substance of the conversation? A. It was."

Defendant testified that he had had considerable to drink and remembered nothing of the evening after he left a bar until he awoke the next morning in jail. He testified that he had no remembrance of the victim, of his arrest, or of any conversation with the officers.

I

Defendant contends that the admission of the statement to the police, above set out, violated the rules laid down in *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. We do not agree. Admittedly, two of the four elements of the *Dorado* rule were present: Defendant was under arrest and there was no warning as to his rights. But we do not think that the record shows either that suspicion had focused on defendant, within the meaning of *People* v. *Stewart* (1965) 62 Cal.2d 571 [43 Cal.Rptr. 201, 400 P.2d 97], or that a "process of interrogation" had begun.

The arrest took place in the small hours of the morning in a dark entryway to a building on a dark street. The victim testified that he was "confused and . . . also dazed from being knocked down"; and the arresting officer testified that defendant, after he had been subdued and handcuffed, "asked numerous times why he had been arrested." The officer then took both participants to the police station, where the conversation above set forth took place. From the evidence, we think that the officer, at the time of the arrest, could not definitely determine whether he had frustrated a robbery of Alessandro by defendant, or whether he had interfered with defendant's attempt to recover from Alessandro money belonging to defendant and previously taken from him. The removal of both parties to the police station,

and the opening question to defendant—"I asked the defendant about it"—were only parts of a legitimate investigatory attempt to determine whether or not a crime had been committed and, if so, by whom. Under these circumstances, no warning as to constitutional rights was yet required. (*People* v. *Stewart, supra* (1965) 62 Cal.2d 571.)

II

Defendant argues: (1) that he was too drunk to form the specific intent required for robbery; and (2) that the evidence shows, at the most, an attempt to rob and not a completed robbery.

While defendant testified that he was drunk and remembered nothing after leaving a bar until he woke the next morning in the police station, the arresting officer testified that, while defendant had liquor on his breath, he was not intoxicated. The conflict was for the trial court, which resolved it against defendant.

While it is true that no one saw defendant in possession of the money alleged to have been taken, that his statement, above quoted, admits only an intent to rob and not the actual robbery, and that it is not impossible that he was frustrated in his attempt before the bills and coins were in his possession and that they fell from the victim's torn pocket as he arose, the testimony that the sound of coins falling on the pavement was heard as defendant was removed from his prone victim would support an inference that they were in defendant's hand and were dropped by him. Again, it was for the trial court to decide whether or not to draw the inference of a completed theft; we cannot here review its conclusion.

The judgment is affirmed.

Files, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied July 26, 1965, and appellant's petition for a hearing by the Supreme Court was denied September 15, 1965.